MURPHY, J.
*794 Plaintiff, Charles J. Triola ("Charles"), appeals the trial court's March 10, 2017 judgment granting an exception of prescription in favor of defendant, Gary V. Triola ("Gary"), dismissing, with prejudice, Charles' claims for an accounting and reimbursement or delivery of his alleged undivided interest in property that he inherited in the succession of his mother.[1] Finding no error in the judgment below, we affirm.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Charles and Gary are brothers. On September 15, 2011, their father, Charles V. Triola ("Decedent"), died testate leaving an olographic will and testament dated January 2, 2011, wherein he bequeathed his entire estate, including all bank accounts, home and contents, in full ownership, solely to Gary. The olographic will was presented for probate on March 2, 2012, and the trial court rendered a judgment of possession in favor of Gary.
Subsequently, on July 23, 2012, Charles filed the instant action seeking to annul the probated testament and to "recover un-reimbursed claims" against Decedent's succession. Specifically, Charles claimed he was entitled to "an accounting and the reimbursement or delivery of [his] one-quarter (1/4) interest in his mother's succession held in usufruct" by Decedent, which pertained to property Charles inherited from his mother in 1965, in the Succession of Margaret (Marguerite) Essie Doucet Triola .[2]
In response to Charles' claims for an accounting and reimbursement or delivery of his interest in the property inherited from his mother, Gary filed an exception of prescription pursuant to La. C.C. art. 340, which provides that "[t]he action of the minor against his tutor, respecting the acts of tutorship, is prescribed by four years, to begin from the day of his majority." Gary argued that Charles' claims for an accounting and reimbursement or delivery prescribed on March 11, 1977, four years after Charles reached the age of majority, and thus his claims filed in 2012 came 35 years too late. Gary also argued that any claim Charles may have had against Decedent, or any of Decedent's "heirs, successors and assigns," for an accounting or for reimbursement or delivery of property arising out of Charles' mother's succession were released and forever discharged by virtue of a final receipt and release Charles executed in favor of Decedent on November 30, 1978.
Conversely, Charles argued that La. C.C. art. 340 was inapplicable because that codal provision deals with actions by a child against his tutor. Charles averred that he was not making a claim against his tutor, but rather, his claim was for "the return of his usufruct property" and, consequently, the law of usufruct applies. Similarly, Charles claimed that the 1978 receipt and release was irrelevant as it, too, dealt with tutorship issues and not with usufruct.
*795 Gary's exception of prescription came for hearing on March 7, 2017. The trial court took the matter under advisement and, thereafter, on March 10, 2017, rendered judgment granting Gary's exception of prescription and dismissing, with prejudice, Charles' claims for an accounting and for reimbursement or delivery of property from the succession of his mother.
It is from this judgment that Charles timely filed the instant appeal.
ASSIGNMENT OF ERROR
On appeal, Charles avers that the trial court erred in granting the exception of prescription and thereby, in effect, dispossessing him of his interest in immovable property.
LAW AND ARGUMENT
An exception of prescription is a peremptory exception, which a defendant may raise at any time. La. C.C.P. art. 928(B). In reviewing a peremptory exception of prescription, the standard of review requires an appellate court to determine whether the trial court's findings of fact were manifestly erroneous. Herrera v. Gallegos , 14-935, pp. 12-13 (La. App. 5 Cir. 10/28/15), 178 So.3d 164, 169. An appellate court should not upset factual findings of a trial court absent manifest error or unless clearly wrong. Adams v. Grefer , 11-1157, p. 7 (La. App. 5 Cir. 9/11/12), 99 So.3d 1083, 1086. Although the factfinder is afforded deference, appellate courts have a duty to review the facts. State v. Lauricella Land Co., L.L.C. , 10-790, p. 11 (La. App. 5 Cir. 4/28/11), 65 So.3d 712, 718, citing State, Dept. of Transp. & Development v. Schwegmann Westside Expressway, Inc. , 95-261, pp. 8-9 (La. 3/1/96), 669 So.2d 1172, 1177.
In order for this court to determine whether the lower court manifestly erred in finding that Charles' claims against Decedent's succession for an accounting and reimbursement or delivery of his interest in property that he inherited from his mother's succession had prescribed, we find it necessary to recount the events and actions taken by Decedent for or on behalf of Charles and Gary following the death of their mother, Margaret. The following facts are gleaned from the record of the Succession of Margaret (Marguerite) Essie Doucet Triola , which record was admitted into evidence at the hearing on the exception of prescription.
1. Succession of Margaret (Marguerite) Essie Doucet Triola
Charles and Gary were the only children born of the marriage of Decedent and his first wife, Margaret. Margaret predeceased Decedent over 53 years ago, on April 26, 1964, when Charles and Gary were minors, aged nine and seven years old, respectively.
On May 11, 1965 , Decedent filed a petition, entitled "Succession of Margaret (Marguerite) Essie Doucet Triola," notifying the court that his wife had died, survived by himself and his two minor sons. In the petition, Decedent represented that Margaret died intestate, possessed of an undivided one-half interest in community property located in St. Bernard Parish and St. Tammany Parish. Recognizing that an inventory and appraisal of Charles and Gary's interest in his deceased wife's property was necessary, Decedent requested the court to issue an order that same be conducted.[3] Decedent further petitioned the court that he be permitted to qualify *796 as the natural tutor for his minor sons and requested the appointment of an undertutrix.
Following the court's appointment of a notary and two appraisers in both St. Bernard Parish and St. Tammany Parish, an inventory and appraisal of the minor boys' property was conducted on May 26, 1965, and certificates were issued and recorded, establishing a minor's mortgage in favor of the minor boys and against Decedent in both Parishes.[4] The value of each minor child's interest in and to the property was established at $75.00 each for the property located in St. Tammany, and $5,400.00 each for the property situated in St. Bernard.
By judgment dated June 14, 1965 , Decedent was confirmed as the natural tutor for his minor sons; an undertutrix was also appointed.[5] Oaths were filed and letters of tutorship were issued to Decedent and the undertutrix, Ruby Doucet Bairnsfather.[6]
On that same day, June 14, 1965 , Decedent filed a petition, together with a sworn descriptive list and computation for inheritance tax purposes, seeking to be placed into possession of an undivided one-half interest of all the property belonging to the community, which existed between Decedent and Margaret, and to a usufruct of the remaining undivided one-half interest owned equally by his minor sons, Charles and Gary. A judgment of possession was signed that same date recognizing and decreeing Decedent to be the surviving spouse in community with Margaret and as the owner of an undivided one-half interest in and to the community property described in the judgment. Decedent was also recognized as the usufructuary of the remaining undivided one-half interest. The June 14, 1965 judgment of possession further recognized and decreed Charles and Gary as Margaret's sole heirs and, as such, placed them each into possession of their mother's undivided one-half interest in the community, subject to the usufruct in favor of their father, Decedent herein.
Also on June 14, 1965 , in his capacity as the "duly qualified natural tutor" of Charles and Gary, Decedent filed a petition seeking court approval to sell the real estate situated in St. Bernard Parish as described in the judgment of possession. The undertutrix concurred with the sale of the property.[7] Thereafter, a judgment *797 was issued authorizing Decedent, as the natural tutor of the minor boys, to sell the St. Bernard real estate in which Charles and Gary had an interest.[8] In order to protect the minor's estate, the trial judge signed an order requiring Decedent to post an additional bond in the amount of $100.00.[9]
On July 20, 1965, Decedent, in his capacity as the natural tutor of his minor sons, and with the concurrence of the undertutrix, petitioned the court to substitute a surety bond for the general mortgage recorded in St. Bernard Parish against Decedent in favor of the minors. Decedent's petition was granted and, accordingly, he posted a tutor's bond in the required amount of $10,900.00.[10]
On June 5, 1965 , nine days prior to the trial court's signing of the June 14, 1965 judgments placing Decedent into possession of his first wife's succession and authorizing Decedent to sell the St. Bernard property, Decedent was remarried to Grace Margaret Kimball. Thus, even though the judgment of possession recognized Decedent as usufructuary of Charles and Gary's undivided one-half interest of their mother's share of the community-to which Decedent was entitled on the day he opened his first wife's succession on May 11, 1965 -pursuant to La. C.C. art. 890, Decedent's legal usufruct had actually terminated by operation of law prior to his being recognized as usufructuary. La. C.C. art. 890 provides:
If the deceased spouse is survived by descendants, the surviving spouse shall have a usufruct over the decedent's *798 share of the community property to the extent that the decedent has not disposed of it by testament. This usufruct terminates when the surviving spouse dies or remarries , whichever occurs first. [Emphasis added.]
Accordingly, upon Decedent's remarriage on June 5, 1965, his usufructuary interest in his deceased wife's share of the community property terminated. Consequently, at the time of the remarriage, Charles and Gary became vested with full ownership of their mother's undivided one-half interest in the property formerly held in community with Decedent. No longer burdened with Decedent's legal usufruct, when placed into possession, Charles and Gary actually became perfect owners of a one-quarter share interest each in their deceased mother's share of the community, with Decedent owning the other one-half of the property.[11] Thus, although the judgment of possession signed on June 14, 1965 recognized Charles and Gary as owners of an undivided one-half interest "subject to the usufruct of their father," we find this bore no legal consequence, since by operation of law, Decedent's usufruct had already been terminated by his remarriage. See La. C.C. art. 890. Moreover, following his remarriage, any remaining authority vested in Decedent with respect to Charles and Gary's full ownership interest in the property they each inherited from their mother was as the minor boys' natural tutor.
On July 23, 1965, one month after obtaining authorization as the minors' tutor to sell the St. Bernard property in which Charles and Gary each had a one-quarter interest in full ownership, Decedent purchased real estate located at 1304 Kent Avenue in Jefferson Parish. The Kent Avenue property was acquired by Decedent jointly with his second wife, Grace Margaret Kimball.[12]
On November 30, 1978, over thirteen years after acquiring full ownership and after having reached the age of majority, Charles and Gary executed a final receipt and release of tutor in favor of Decedent relative to their respective undivided interests in and to the property they each inherited from their deceased mother.[13] The receipt and release stated the following, in pertinent part:
PERSONALLY CAME AND APPEARED: CHARLES JOSEPH TRIOLA and GARY VICTOR TRIOLA, who declared and acknowledged that CHARLES VINCENT TRIOLA, their tutor, appointed and qualified in the said capacity, has rendered unto them a full and detailed account of his administration as appearers' tutor, with all proper and necessary vouchers in support of and accompanying said accounts; that they have carefully examined said accounts and vouchers during more than ten days prior to these presents; that they con *799 sider and are fully satisfied that the said accounts are just, true and correct , and they approve the said accounts as well as administration, accounts and acts of the said CHARLES VINCENT TRIOLA as their tutor.
And the said CHARLES JOSEPH TRIOLA, whose birthday is March 11, 1955 and GARY VICTOR TRIOLA, whose birthday is January 22, 1957, both persons of the full age of majority , does hereby acknowledge to have presently received from CHARLES VINCENT TRIOLA, as tutor has in his possession or custody for the said appearers .
And the said CHARLES JOSEPH TRIOLA and GARY VICTOR TRIOLA, further declares and acknowledges that all other property, securities, effects and cash which the said tutor received for account of said appearers have been duly accounted for by him in said account to the full satisfaction of appearers , and do by these presents release and discharge and forever aquit [sic] CHARLES VINCENT TRIOLA, his heirs, successors and assigns of and from any and all liability of any nature and kind, including any claims and damages resulting from his administration as tutor . [Emphasis added.][14]
Additionally, Charles and Gary authorized and directed the recorder of mortgages in and for the Parishes of St. Bernard and St. Tammany to cancel and erase the minor's mortgage therein recorded. Thereafter, on December 19, 1978, a final order was issued directing the clerk of court for the Parish of St. Bernard to cancel and erase the minor's mortgage from its records, and to forward a copy of the motion and order to the clerk of court for the Parish of St. Tammany to have the minor's mortgage in that Parish likewise canceled and erased.
2. Succession of Decedent and Prescription of Charles' Claims
As previously noted, in the case sub judice , Charles sought an accounting and reimbursement or delivery of property he inherited from his mother's succession that Charles contended was being held in usufruct by his father until his father's death in 2011.[15] At some point after filing the instant suit, however, Charles claimed he discovered his father's marriage license evidencing Decedent's remarriage to Grace Kimball, which Charles claimed "created an impression of usufruct." According to Charles, "[t]his usufruct was obtained by withholding the fact of the June 2, 1965 remarriage" when Decedent petitioned the court to sell the St. Bernard property. Further, Charles argued that, because his father's usufruct ended upon his remarriage, Decedent "had no right to request the use of the usufruct sale proceeds from the [St. Bernard property] to invest in the *800 1304 Kent Ave. house."[16] For the first time on appeal, Charles contends that Decedent's actions in withholding the truth of his remarriage when he petitioned the court for authority to sell the usufruct property amounted to fraud pursuant to La. C.C. art. 1953, which states:
Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.
Without citing to any authority, Charles contends that this fraud committed by his father was sufficient to interrupt prescription for the claims he has made in the instant case. Alternatively, Charles urges that the doctrine of contra non valentem should be applied for purposes of interrupting the prescription of his claims.[17] Specifically, Charles avers that "if [Decedent] had told the truth in 1965[,] he would not have been able to use the usufruct property." In short, Charles claims that he was only 10 years old when his father remarried and that he "would have had no way of knowing that the timing of the remarriage of his father had any consequences on [his] inheritance from his mother[,]" and it would be "improper [for the court] to impose a prescriptive period on an issue in which he could not have expected to know the significance of as a ten (10) year old child; [i.e. ,] of improper use of his property under the doctrine of usufruct."
The fatal flaw negating Charles' arguments regarding the applicability of fraud and/or the doctrine of contra non valentem is that the record on appeal, specifically the record of the Succession of Margaret (Marguerite) Essie Doucet Triola as set forth in detail above, clearly demonstrates that all of the actions undertaken by Decedent in connection with the sale of the St. Bernard property were done solely in his capacity as the natural tutor of Charles and Gary, not in his capacity as usufruc *801 turary as Charles posits. Moreover, the record establishes that the actions taken by Decedent on behalf of his minor sons were done with the concurrence of the undertutrix and with the approval of the court, all in accordance with the applicable provisions of the Louisiana Code of Civil Procedure and the Louisiana Civil Code. Thus, Charles' argument that La. C.C. art. 340 is not applicable to his claims because the instant action is not an action of a minor against the tutor, but rather, involves the law of usufruct, is without merit. The facts unequivocally demonstrate that Decedent's usufruct terminated prior to his having taken any action with respect to Charles' ownership interest in the property he inherited from his mother. The law of usufruct does not apply to the claims asserted by Charles against Decedent's succession; the facts fall squarely within the application of La. C.C. art. 340, a tutorship article.
The tutorship of a minor normally ends but in one way-the attainment of majority. Succession of Jarreau , 289 So.2d 887, 890 (La. App. 4 Cir. 1974). Louisiana Civil Code article 340 extends the right of the former minor to an examination into the acts of tutorship for four years beyond majority. A prerequisite for any claim by the former minor is an action against the tutor for an accounting.[18] No absolute duty is imposed upon the tutor to file a final account after the expiration of the tutorship. A tutor must do so only after an order of court upon the application of the former minor. See La. C.C.P. art. 4392.[19] This action for an accounting is barred after four years from the date the minor reaches majority. Succession of Jarreau , 289 So.2d at 890.
Applying these legal principles to the case sub judice , any claim Charles may have had against Decedent for an accounting and/or reimbursement or delivery of property Charles inherited from his mother, or other acts of Decedent's tutorship, were required to have been asserted within the prescriptive period of La. C.C. art. 340 and no later. Id. In this case, the claims asserted by Charles prescribed on March 11, 1977, four years after he reached the age of majority on March 11, 1973. Moreover, as evidenced by the final receipt and release of tutor, which Charles executed in November 1978 when he was 23 years old (after his rights to an accounting and/or reimbursement from Decedent had prescribed the previous year), the bond and minor's mortgage that had been put into place to protect Charles' interest was released.
For the foregoing reasons and finding no manifest error, the judgment of the trial court granting the exception of prescription in favor of defendant, Gary V. Triola, and dismissing, with prejudice, the claims of plaintiff, Charles J. Triola, for an accounting and reimbursement or delivery of property inherited from his mother's succession is affirmed.
AFFIRMED.

The March 10, 2017 judgment also (1) granted a motion for partial summary judgment in favor of Gary and against Charles declaring the January 2, 2011 olographic testament of Charles V. Triola to be in valid form, (2) denied Gary's motion for costs and attorney fees, and (3) ordered that Gary's exception of res judicata was moot. Charles has only appealed that portion of the trial court's judgment granting Gary's exception of prescription.

Proceedings No. 11-531, Twenty-Fifth Judicial District Court, Parish of St. Bernard.

An inventory and appraisal of a minor's property are required by La. C.C.P. art. 4101, and the appointment of a notary and two appraisers is specifically required by La. C.C.P. arts. 3131 and 3132. See Griffith v. Roy , 263 La. 712, 731, 269 So.2d 217, 224 (La. 1972).

At the time of these proceedings, La. C.C.P. art. 4131 (now La. C.C.P. art. 4134 ) provided that the natural tutor was not required to furnish bond, but was obliged to record the certificate of inventory required by La. C.C.P. art. 4101 when one applied for the appointment as tutor, which operated as a legal mortgage in favor of the minor. Griffith v. Roy , 263 La. at 731-732, 269 So.2d at 224.

La. C.C.P. art. 4201 requires the appointment of an undertutor by the court at the time it renders judgment appointing a tutor.

La. C.C.P. art. 4171 requires that every tutor take an oath before he enters upon his performance of his official duties, and the natural tutor include within his oath a list of the parishes in which he owns immovable property. See also La. C.C.P. art. 4172.

Pursuant to La. C.C.P. Art. 4301, "[a] tutor may sell or exchange any interest of a minor in property, owned either in its entirety or in indivision, for any purpose, when authorized by the court as provided in Article 4271." La. C.C.P. Art. 4271 states:
The tutor shall file a petition setting forth the subject matter to be determined affecting the minor's interest, with his recommendations and the reasons therefor, and with a written concurrence by the undertutor. If the court approves the recommendations, it shall render a judgment of homologation. The court may require evidence prior to approving the recommendations.
If the undertutor fails to concur in the tutor's recommendations, the tutor shall proceed by contradictory motion against him. After such hearing and evidence as the court may require, the court shall decide the issues summarily and render judgment.
Additionally, La. C.C.P. art. 4341 provides:
In addition to the requirement of Article 4271, a petition for authority to sell property of a minor at private sale shall set forth a description of the property, the price and the conditions of the proposed sale, and the reasons which make it advantageous to the minor to sell at private sale.

The St. Bernard Property at issue was the family home. According to the inventory and appraisal prepared by the notary and two appraisers appointed by the court to conduct an inventory and appraisal of the community property, the family home was valued at $20,000.00. The judgment authorizing Decedent to sell the property, in which his sons each had an ownership interest, directed him to sell it to the designated buyers for the appraised price of $20,000.00. According to the petition, in his capacity as tutor for his minor sons , Decedent sought the court's authority to sell the St. Bernard property in order to "procur[e] real estate of greater value that [would] enhance the interest of the minors."

Pursuant to La. C.C.P. art. 4304, "[b]efore authorizing the sale of a minor's immovable property, the court may require the tutor to furnish additional security in an amount to be fixed by the court."

La. C.C.P. Art. 4136 states:
Any tutor who desires to give bond or security and thus release from an existing general or special mortgage the whole or a portion of the property covered thereby may do so with the approval of the court as provided in Article 4271, provided the bond or security tendered fully protects the minor.
Any of the securities enumerated in Articles 4132 and 4133 may be substituted at any time either in whole or in part for any other kind, at the option of the tutor, and with the approval of the court as provided in Article 4271, which shall enter the necessary order to render the substitutions effective. If other security has been furnished instead of a general mortgage, the tutor may not revert to a general mortgage.
When a bond or security is substituted only in part for the general or special mortgage, the amount thereof may be proportionately smaller based on the value of the property to be released from mortgage.

Based on the appraisal and subsequent sale of the St. Bernard property for $20,000.00, Charles and Gary's one-quarter interest from the proceeds of the sale was valued at $5,000.00 each.

According to the record on appeal, Grace Margaret Kimball predeceased Decedent and her undivided one-half interest in the Kent Avenue property was acquired by Decedent through a judgment of possession rendered on March 21, 2006.

Charles turned 18 years old on March 11, 1973. During the previous year, in 1972, the Louisiana legislature reduced the age of majority from 21 years of age to 18 years of age. See La. C.C. art. 39 (formerly La. C.C. art. 37, which provided that "[m]inors are those who have not attained the age of 18 years.") Thus, Charles reached the age of majority on March 11, 1973; Gary reached the age of majority on January 22, 1975.

La. C.C. art. 339 states:
Every agreement which may take place between the tutor and the minor arrived at the age of majority, shall be null and void, unless the same was entered into after the rendering of a full account and delivery of the vouchers, the whole being made to appear by the receipt of the person to whom the account was rendered, ten days previous to the agreement.
As evidenced by a review of the express terms set forth in the receipt and release Charles executed when he was of the full age of majority, the receipt complied with the requirements of La. C.C. art. 339.

Charles' petition filed in his father's succession also sought to annul the probated olographic testament of his father, which issue is not before this court on appeal.

The parties presumed that the proceeds from the sale of the St. Bernard property (i.e. , immovable property was converted to moveable corporeal goods (cash)), were used to purchase the Kent Avenue property, which is currently a part of Decedent's succession. Citing La. C.C. art. 568.1, Charles argued that when the St. Bernard property, which was "subject to the usufruct," was sold by Decedent, the usufruct attached to the proceeds of the sale. Thus, Charles averred that when the sale proceeds were then used to purchase the Kent Avenue property, he became vested with a one-quarter interest in Decedent's undivided one-half interest in that property. Put another way, Charles argued that his one-quarter interest in the St. Bernard property "which was acquired from his mother's estate became a 12.5% interest in [the] 1304 Kent Ave[nue]" property." It was this purported property interest for which Charles filed suit seeking an accounting and reimbursement or delivery from Decedent's succession.

The doctrine of contra non valentem was created as an exception to the general rules of prescription. Standard Fire Ins. Co. v. Safeguard Storage Properties, L.L.C., 04-794, pp. 11-12 (La. App. 5 Cir. 1/25/05), 894 So.2d 502, 506-07. There are four situations in which the doctrine of contra non valentem can be applied to suspend the running of prescription:
(1) where there was some legal cause which prevented courts or their officers from taking cognizance of or acting on plaintiff's action;
(2) where there was some condition coupled with contract or connected with proceedings which prevented creditor from suing or acting;
(3) where defendant himself has done some act effectually to prevent plaintiff from availing himself of his cause of action; and
(4) where some cause of action is not known or reasonably knowable by plaintiff, even though his ignorance is not induced by defendant.
Richards v. Choice Hotels Int'l, Inc. , 13-973, p. 6 (La. App. 5 Cir. 5/21/14), 142 So.3d 249, 252.

La. C.C.P. Art. 4391 :
A tutor shall file an account annually, reckoning from the day of his appointment, and at any other time when ordered by the court on its own motion or on the application of any interested person.

La. C.C.P. Art. 4392 :
A tutor may file a final account at any time after expiration of the tutorship.
The court shall order the filing of a final account upon the application of the former minor after the expiration of the tutorship, or upon the rendition of a judgment ordering the removal of a tutor or authorizing his resignation.