FORD MOTOR CREDIT COMPANY, LLC

VERSUS

OLETHIA DAVIS

NO. 20-CA-271

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE FORTIETH JUDICIAL DISTRICT COURT
PARISH OF ST. JOHN THE BAPTIST, STATE OF LOUISIANA
NO. 71,928, DIVISION "B"
HONORABLE KIRK A. VAUGHN, JUDGE PRO TEMPORE

October 13, 2021

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Marc E. Johnson

**AFFIRMED IN PART,**
**VACATED IN PART AND REMANDED**
    **SMC**
    **FHW**
    **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
FORD MOTOR CREDIT COMPANY, LLC
   Scott C. Barney

COUNSEL FOR DEFENDANT/APPELLANT,
OLETHIA DAVIS
   In Proper Person

**CHEHARDY, C.J.**

Plaintiff-appellee, Ford Motor Credit Company ("FMCC"), filed suit in March 2018 against Ms. Olethia Davis, a resident of St. John the Baptist Parish, alleging that she defaulted on an April 27, 2011 retail installment contract that granted a security interest in the 2012 Ford Focus she purchased while living in North Carolina. The contract provided that Ms. Davis would make 60 monthly payments of $409.10, with the first payment due June 11, 2011. Beginning in November 2011, Ms. Davis asked FMCC to grant her an extension of time to make her monthly installment payment. FMCC granted Ms. Davis's requests for an extension several times and, on March 10, 2014, entered into a "Reschedule of Payments Agreement," which refinanced the remaining balance of her loan to lower her monthly payments, extended the loan term to 66 additional payments, and increased the interest rate from 4.9 percent to nine percent, but incorporated all other terms of the original installment contract.

After the Reschedule, Ms. Davis again requested extensions of time to make payments, the second of which FMCC granted on February 2, 2016. According to FMCC, Ms. Davis failed to make payments for February, March, and April 2016. Ms. Davis disputes FMCC's contention that she failed to make a payment in February 2016, but she does not dispute FMCC's evidence that she failed to make payments after that time.

On May 5, 2016, FMCC sent a "Notice of Default and Intent to Repossess," indicating that payments due in February, March, and April 2016 were overdue, to Ms. Davis's North Carolina address. The Notice indicated that Ms. Davis could remit the total amount due for those three months or her property may be repossessed and sold.[1] FMCC claims that Ms. Davis made no additional payments,

---

[1] The notice further stated: "Louisiana law permits repossession of motor vehicles upon default without further notice or judicial process."

and it engaged repossession contractors in both North Carolina and Louisiana.

Nearly a year later, on March 14, 2017, FMCC repossessed the vehicle. On March 17, 2017, FMCC mailed a "Notice of Our Plan to Sell Property" to Ms. Davis's address in LaPlace, Louisiana. The notice explained that FMCC had repossessed Ms. Davis's property and that it would sell the property after 21 days (from the March 17, 2017 date of notice) had passed. FMCC subsequently sold the vehicle at auction on April 17, 2017, and applied the proceeds received from the sale to Ms. Davis's account. FMCC then filed suit on March 9, 2018 to collect the outstanding balance of $6,425.74 owed under the installment agreement, plus interest, costs, and contractual attorney's fees.[2]

In response, Ms. Davis filed a reconventional demand against FMCC contending that her vehicle had been declared a "lemon" pursuant to the Ford Powershift Transmission litigation, *Vargas v. Ford Motor Company*, 12-08388 (C.D. Cal.), and alleging that FMCC had improperly repossessed and sold her vehicle in violation of the Fair Debt Collection Practices Act and North Carolina statutory laws. Ms. Davis claims that she experienced several issues with the vehicle since 2012, and she contends that a number of safety recalls applied to her vehicle.[3] Ms. Davis acknowledges that she opted out of the *Vargas* litigation after the vehicle was repossessed.

---

[2] According to FMCC's petition, FMCC recovered the vehicle and sold it for $6,400.00, which amount was credited to Ms. Davis's account balance, leaving a remaining balance of $6,425.74. In her reconventional demand, Ms. Davis contends that the balance owed is actually $4,546.08, and that FMCC included an additional $1,879.66 for "expenses of retaking and storing, … and expenses of reconditioning[.]"

[3] Ms. Davis's reconventional demand alleges that FMCC "has already received more than it was entitled to under North Carolina Lemon Law and the Magnuson-Moss Warranty Act," and that she is entitled to the full contract price plus the non-refundable portions of extended warranties and service contracts, all upfront charges, including but not limited to sales tax, license and registration fees; all finance charges incurred after the vehicle's defect was first reported; any incidental damages; and fair debt collection and credit reporting violations, including treble damages for alleged unfair and deceptive business practices. Ms. Davis further alleges that after FMCC repossessed her vehicle, it "engaged in fraud by selling the vehicle below fair market value to a Ford dealership[,]" which "allowed Ford Credit to profit from the wrongful and illegal repossession of the vehicle, pursue a deficiency against Davis, assist a Ford dealer in selling the vehicle at a profit, and financing the vehicle when sold to another customer." Ms. Davis cites the

FMCC filed a motion for summary judgment on its principal demand and asserted an exception of prescription in response to Ms. Davis's reconventional demand. The trial court held a hearing on August 16, 2019, and on September 16, 2019, issued a written judgment granting FMCC's exception of prescription and dismissing Ms. Davis's reconventional demand against it with prejudice.[4] The September 16, 2019 judgment also granted FMCC's motion for summary judgment on its principal demand, finding Ms. Davis liable in the amount of $6,425.74, plus interest on that sum at the rate of 9.0 percent per annum from April 19, 2017 until paid in full, plus all costs, including attorney's fees, incurred by FMCC in prosecuting its claim.

Ms. Davis appealed the September 16, 2019 judgment and also filed a motion for "limited remand" seeking certification of the judgment as final and appealable under La. C.C.P. art. 1915 (B), because the judgment as written was not a final judgment due to the award of attorney fees that failed to specify an amount. A majority of this Court *en banc* issued a March 17, 2021 ruling remanding the matter to the district court to either certify the judgment as final and appealable under La. C.C.P. art. 1915 (B), or specify the amount of attorney's fees to be awarded. *Ford Motor Credit Company, LLC v. Davis*, 20-271 (La. App. 5 Cir. 3/17/21) (unpub.).

On April 8, 2021, FMCC filed a motion to designate the amended partial final judgment as final and appealable and asked the trial court to expressly determine that there was no just reason for delaying the appeal.[5] On April 15,

---

North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1.1, and argues that she is entitled to treble damages for FMCC's alleged violation of that statute.

[4] In the August 16, 2019 hearing transcript, the trial court states: "I'm basing [my ruling] on Louisiana law of prescription as well as summary judgment rules regarding deficiency judgments." The written judgment contains no additional reasons.

[5] Also on April 8, 2021, the trial court entered an "Order and Written Reasons" granting FMCC's motion to designate the September 16, 2019 judgment as final and appealable and expressly determining that there was no just reason for delaying the appeal. That April 8, 2021 Order,

2021, the trial court signed a judgment mirroring the September 16, 2019 judgment, and referencing FMCC's motion for summary judgment and exception of prescription that were heard on August 16, 2019, yet eliminating the 2019 judgment's reference to attorney's fees.

Although the April 15, 2021 judgment neither designates the September 19, 2019 judgment as final and appealable pursuant to La. C.C.P. art. 1915 (B), nor includes a finite attorney's fee award, and thus does not strictly comply with this Court's March 17, 2021 Order, we nonetheless find that the April 15, 2021 judgment on its face constitutes a final judgment pursuant to La. C.C.P. arts. 1841 and 1918, as it determines the merits of the claims between the parties and awards the relief to which the prevailing party is entitled.[6] The judgment states that Olethia Davis is liable to Ford Motor Credit Company in the amount of $6,425.74, plus interest at the rate of nine percent per annum, and grants FMCC's peremptory exception of prescription. Accordingly, this Court has subject-matter jurisdiction to review the district court's April 15, 2021 judgment on appeal.[7]

_____

which stated that the trial court "will sign an Amended Partial Final Judgment[,]" did not include the trial court's ruling on the merits and, in and of itself, is not a final, appealable judgment.

[6] La. C.C.P. art. 1841, "Judgments, interlocutory and final," provides: "A judgment is the determination of the rights of the parties in an action and may award any relief to which the parties are entitled. It may be interlocutory or final. A judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment. A judgment that determines the merits in whole or in part is a final judgment."

La. C.C.P. art. 1918 (A) was recently amended by the Louisiana Legislature and became effective August 1, 2021. It now provides: "A final judgment in accordance with Article 1841 shall be identified as such by appropriate language; shall be signed and dated; and shall, in its decree, identify the name of the party in whose favor the relief is awarded, the name of the party against whom the relief is awarded, and the relief that is awarded. If appealed, a final judgment that does not contain the appropriate decretal language shall be remanded to the trial court, which shall amend the judgment in accordance with Article 1951 within the time set by the appellate court."

[7] The Legislature's recent amendment to La. C.C.P. art. 2088, effective August 1, 2021, provides that notwithstanding a pending appeal, the trial court retains jurisdiction over matters not reviewable under the appeal, including the right to "[s]et and tax costs, expert witness fees, and attorney fees." As the April 15, 2021 final judgment on review in this Court does not mention attorney's fees, Article 2088, as amended, does not prohibit FMCC from seeking attorney's fees in the trial court.

Ms. Davis asserts several assignments of error, alleging procedural errors in the trial court's rulings on FMCC's motion for summary judgment and exception of prescription that FMCC filed in response to her reconventional demand.[8] For the reasons that follow, we affirm the portion of the trial court's judgment granting summary judgment in favor of FMCC, but vacate the trial court's ruling on FMCC's exception of prescription and remand for further proceedings.

*FMCC's Motion for Summary Judgment on FMCC's Principal Demand*

Appellate courts review a judgment granting or denying a motion for summary judgment *de novo*. *Robinson v. Otis Condominium Ass'n, Inc.*, 20-359 (La. App. 5 Cir. 2/3/21), 315 So.3d 356, 361, *writ denied*, 21-343 (La. 4/27/21), 314 So.3d 837. Under this standard, we use the same criteria as the trial court in determining if summary judgment is appropriate: whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. *Id*.

A fact is "material" when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery. *Alexander v. Parish of St. John the Baptist*, 12-173 (La. App. 5 Cir. 10/16/12), 102 So.3d 904, 909, *writ denied*, 12-2448 (La. 1/11/13), 107 So.3d 617. Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. *Id*. The party moving for summary judgment must meet a strict standard of showing that the facts are clear and that any real doubt as to the existence of a genuine issue of material fact has been excluded. *Robinson*, 315 So.3d at 361. If the mover meets this burden, the burden shifts to the non-mover to present evidence demonstrating that material issues of

---

[8] Ms. Davis also points out that the trial court did not rule on her motion for joinder of Ford Motor Company as an indispensable party.

fact remain. *Id*. "Once the motion for summary judgment has been properly supported by the moving party, the failure of the nonmoving party [who has the burden of proof at trial] to produce evidence of a material factual dispute mandates the granting of the motion." *Portillo v. Progressive Paloverde Ins. Co.*, 13-815 (La. App. 5 Cir. 3/26/14), 138 So.3d 696, 698.

Attached to FMCC's motion for summary judgment is the affidavit of its Financial Services Specialist and a copy of the 2011 North Carolina Installment Contract, several Extension Agreements, and the 2014 Reschedule of Payments Agreement. The 2011 Installment Contract provides, in pertinent part:

A.   Payments: You must make all payments in U.S. funds when they are due. …

B.   Security Interest: You give the Creditor a security interest in:
1.   The vehicle and all parts or other goods put on the vehicle;
2.   All money or goods received for the vehicle; and
3.   All insurance premiums and service contracts financed for you.
This secures payment of all amounts you owe under this contract. It also secures your other agreements in this contract.

***

G.   Default. You will be in default if:
1.   You do not make a payment when it is due[.]

H.   Repossession. If you default, the Creditor may require you to pay at once the unpaid Amount Financed, the earned and unpaid part of the Finance Charge and all other amounts due under this contract. Creditor may repossess (take back) the vehicle, too. Creditor may also take goods found in or on the vehicle when repossessed and hold them for you.

I.   Your Right to Redeem: If the vehicle is taken back, Creditor will send you notice. The notice will say that you may redeem (buy back) the vehicle and will explain how to redeem the vehicle. You may redeem the vehicle up to the time the Creditor sells

it or agrees to sell it. If you do not redeem the vehicle, it will be sold.

J.  Disposition of Motor Vehicle. If the vehicle is taken back and sold, the money from the sale, less allowed expenses, will be used to pay the amount still owed on the contract. Allowed expenses include those paid as a direct result of having to retake the vehicle, hold it, prepare it for sale, and sell it. Reasonable lawyer's fees and legal costs are allowed, too. If there is any money left (surplus), it will be paid to you. If the money from the sale is not enough to pay off this contract and costs, you will pay what is still owed to the Creditor. If you do not pay the amount when the Creditor asks, the Creditor may charge you interest at the highest lawful rate until you pay.

K.  Collection costs: Except as otherwise provided by law, you must pay any and all expenses related to enforcing this contract, including collection expenses, lawyers' fees and other legal expenses.

The Extension agreements memorialize FMCC's consent to extending the due dates on nine of Ms. Davis's monthly installments. The Reschedule of Payments Agreement lowered her monthly note, extended the term of the loan, and raised the interest rate to nine percent. The affidavit of FMCC's representative further states:

> After Ford Credit declared the default, Davis did not remit any further payments. Davis informed Ford Credit that she might relocate to Louisiana, but she did not provide her Louisiana address. In an effort to locate its collateral, Ford Credit engaged repossession contractors in both Louisiana and North Carolina.

In opposition, Ms. Davis produced information related to recall notices on the 2012 Ford Focus; evidence that she opted out of the *Vargas* class action litigation against Ford Motor Company; and a non-certified, uncorroborated copy of her Experian credit report in an effort to dispute FMCC's sworn affidavit listing Ms. Davis's payment history. Notwithstanding Ms. Davis's credit report, she never disputes that she stopped making monthly payments in 2016, which led to

FMCC's notice of intent to repossess issued in May 2016 and its repossession of the vehicle in March 2017.[9]

FMCC established via evidence admissible under La. C.C.P. arts. 966 and 967 that Ms. Davis (1) signed the installment contract and subsequent "reschedule of payments agreement," (2) received the loan proceeds to purchase the vehicle, and (3) defaulted on the agreement by failing to pay her reconfigured installment amounts before Ford issued its notice of intent to repossess in 2016. Although Ms. Davis disputes the FMCC representative's statements regarding the number of payments she actually made, she produced no evidence to rebut the ultimate issue of whether she defaulted on the loan. "The plea of payment is an affirmative defense, and the burden is upon the pleader to prove payment." *American Bank v. Saxena*, 553 So.2d 836, 844 (La. 1989). *See also Whitney Bank v. Rockwell*, 94-3049 (La. 10/16/95), 661 So.2d 1325, 1329 (affirming appellate court's determination that when a defendant does not assert facts that constitute a valid defense to enforcement of a promissory note, there is no genuine issue of material fact, and bank is entitled to judgment as a matter of law). General allegations from a defendant that payments were made, unaccompanied by supporting documentation such as money order receipts or cancelled checks, are insufficient to carry a defendant's burden of proving he is not properly credited for payments. *Gulf Coast Bank & Trust Co. v. Donnaud's Inc.*, 99-1228 (La. App. 5 Cir. 4/25/00), 759 So.2d 268, 272.

To show that a material issue of fact exists that renders summary judgment on the note inappropriate, Ms. Davis would have had to produce evidence contradicting FMCC's sworn statement that she defaulted on the loan before FMCC issued its notice of intent to repossess in May 2016. While Ms. Davis offers

---

[9] The record contains no evidence to show that Ms. Davis provided FMCC her Louisiana address before FMCC issued the May 15, 2016 "Notice of Default and Intent to Repossess."

an unauthenticated copy of her credit history report to argue that discrepancies exist between the FMCC representative's affidavit outlining her delinquent payments over the course of the loan, the credit report, even if admissible, does not contradict FMCC's evidence of default. Under the terms of the Installment Contract, FMCC was not obligated to make additional demands on Ms. Davis for payment, and FMCC was entitled to repossess the vehicle upon default.

FMCC further presented the Statement of Sale of the vehicle for $6,400.00, which also delineates FMCC's application of the sale proceeds to Ms. Davis's outstanding balance, resulting in a $6,425.74 deficiency. Although Ms. Davis argues that she should not be held liable for $1,879.66 of the deficiency amount, which FMCC charged for "retaking and storing, … and expenses of reconditioning" the vehicle prior to the 2017 sale, the terms of the Installment Contract squarely include such expenses. This argument lacks merit.

Ms. Davis raises additional procedural issues that, she contends, render the trial court's ruling on summary judgment reversible. She asserts the trial court violated La. C.C.P. art. 966 (C) in setting the hearing on FMCC's motion for summary judgment less than 30 days after the motion was filed and less than 30 days from her receipt of notice of the hearing. We note, however, that La. C.C.P. art. 966 (C) permits alteration of this requirement "by agreement" of the parties. FMCC correctly points out that Ms. Davis filed an opposition to its motion for summary judgment and appeared at the hearing to argue on her own behalf; she did not seek a continuance nor object at that time as to the timeliness of service, and thus waived her right to object on these grounds. *Credit Acceptance Corp. v. Prevo*, 52,734 (La. App. 2 Cir. 6/26/19), 277 So.3d 847, 853; *see also Dumas v. Angus Chem. Co.*, 31,399 (La. App. 2 Cir. 1/13/99), 729 So.2d 624, 627. Ms. Davis's assignment of error in this regard lacks merit.

Ms. Davis next argues that the trial court erroneously allowed FMCC to "amend its petition" through a motion for summary judgment, apparently on the basis that the trial court's award of nine percent interest is different from FMCC's request in its petition for an award of 4.9 percent interest. FMCC's summary judgment evidence, specifically the Amended Agreement, raised the interest rate to nine percent. Judgments that are not default judgments are not limited in kind or amount by a plaintiff's demand in the petition but may include the relief to which the successful party is entitled. La. C.C.P. art. 862. FMCC's summary judgment evidence supports the nine percent interest awarded. Ms. Davis's argument in this regard lacks merit.

After de novo review, we find the trial court properly granted FMCC's summary judgment against Ms. Davis, awarding FMCC the outstanding contract amount of $6,425.74 plus interest at nine percent per annum. Accordingly, the portion of the trial court's judgment granting summary judgment in favor of FMCC is affirmed.

*FMCC's Exception of Prescription on Ms. Davis's Reconventional Demand*

In addition to FMCC's motion for summary judgment, the trial court granted FMCC's exception of prescription based on Louisiana's law of prescription. FMCC argues that Louisiana's prescription laws apply pursuant to La. Civ. Code art. 3549 B, that Ms. Davis's claims are really claims in redhibition, and that claims in redhibition must be asserted within one year from the day the defect is discovered by the buyer under La. Civ. Code art. 2534. On the other hand, Ms. Davis contends that her claims are asserted under North Carolina law pursuant to the choice-of-law provision contained in the Installment Contract, that her claims are not time-barred, and that they are breach-of-contract claims for Ford's violation of North Carolina's "lemon" law.

The party pleading prescription ordinarily bears the burden of proving the claim has prescribed. *Hogg v. Chevron USA, Inc.*, 09-2632 (La. 7/6/10), 45 So.3d 991, 998. If, however, a petition has prescribed on its face, the burden shifts to the plaintiff to show that the action has not prescribed. *Id*. An appellate court reviews an exception of prescription under the manifest-error standard of review if evidence is introduced in support or contravention of the exception. *Succession of Triola*, 17-301 (La. App. 5 Cir. 12/27/17), 236 So.3d 792, 795. When no evidence is introduced, appellate courts review judgments sustaining an exception of prescription *de novo*, accepting the facts alleged in the petition as true. *DeFelice v. Federated Nat'l Ins. Co.*, 18-374 (La. App. 5 Cir. 7/9/19), 279 So.3d 422, 426.

At the outset, we note that neither party offered, filed, and introduced into evidence any documentation either supporting or defending against the exception of prescription. FMCC's prescription exception relies heavily on Ms. Davis's deposition testimony to support its contention that because Ms. Davis knew the vehicle was a "lemon" in 2012, and because her claims are really claims in redhibition, she had one year from that date, or at best, four years from the date the car was delivered, to assert them.[10] Importantly, FMCC did not formally offer, file and introduce Ms. Davis's deposition testimony into the record at the hearing. "At the trial of a peremptory exception of prescription, 'evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition.' La. C.C.P. art. 931. In the absence of evidence, the exception of prescription must be decided on the facts alleged in the petition, which are accepted as true." *Denoux v. Vessel Management Servs.*, 07-2143 (La. 5/21/08), 983 So.2d 84, 88. "Evidence not properly and officially offered and

---

[10] The transcript of Ms. Davis's deposition testimony was not available when FMCC filed its exception of prescription, but FMCC filed supplemental briefing in support of its prescription exception that included portions of the deposition transcript. In this Court, Ms. Davis objects to FMCC's supplemental filing on the basis that she did not receive a copy of it before the August 16, 2019 hearing.

introduced cannot be considered, even if it is physically placed in the record. Documents attached to memoranda do not constitute evidence and cannot be considered as such on appeal." *Id.* at 88 (citing *Ray Brandt Nissan v. Gurvich*, 98-634 (La. App. 5 Cir. 1/26/99), 726 So.2d 474); *see also Walker on Behalf of Fried v. ACE American Ins. Corp.*, 20-449 (La. App. 5 Cir. 5/26/21), --- So.3d ---, 2021 WL 2133235, at *5. The Supreme Court and this Court routinely have held that appellate courts may not consider evidence not properly and officially offered, introduced, and admitted into evidence, whether the lack of admission into evidence was assigned as error or not. *Id.* (citing *Barnes v. Jacob*, 13-596 (La. App. 5 Cir. 12/12/13), 131 So.3d 363, 364).

Without addressing the merits of the exception, we find that the evidence upon which the trial court relied to sustain FMCC's prescription exception was not properly before it, and the record is insufficient for this Court's review. "Failure to adequately prepare the record by neglecting to offer matters into evidence can alter the outcome of a case, especially in an exception of prescription where the burden of proof may shift between the parties." *Cichirillo v. Avondale Industries, Inc.*, 04-2894 (La. 11/29/05), 917 So.2d 424, 428, n.7.

Because no evidence is properly before this Court on FMCC's exception, this Court must accept all allegations in Ms. Davis's reconventional demand as true (solely for purposes of evaluating the exception of prescription on appeal). Among other things, Ms. Davis's reconventional demand asserts a claim against FMCC for breach of contract which, under Louisiana's law of prescription, carries a 10-year prescriptive period. La. Civ. Code art. 3499.[11] Accepting the breach-of-contract

---

[11] We make no determination at this time whether Louisiana law or North Carolina law applies to the merits of Ms. Davis's claims in reconvention or whether Ms. Davis has properly stated a cause of action for breach of contract under the law of either jurisdiction. We note, however, that even if North Carolina's substantive law applies, under La. Civ. Code art. 3549 B, Louisiana's prescription rules apply when evaluating the timeliness of the claims, unless an exception can be proved: "When the substantive law of another state would be applicable to the merits of an action brought in this state, the prescription and peremption law of this state applies, except as specified

allegations as true for purposes of evaluating the exception, Ms. Davis's breach-of-contract claims are not prescribed on their face.

Alternatively, even if, as FMCC argues, Ms. Davis's claims are redhibitory rather than breach-of-contract claims, the record contains no properly introduced evidence to establish that the claims in redhibition are prescribed. Not only was Ms. Davis's deposition testimony not offered, filed, and introduced into evidence at the hearing, but also the documentation proving that she opted out of the *Vargas* class action litigation is not part of the record on FMCC's prescription exception. Again, accepting as true Ms. Davis's allegation in her reconventional demand that her vehicle was part of the *Vargas* class-action litigation, Ms. Davis's participation in that litigation may have interrupted prescription of her claims under La. Civ. Code art. 3463.[12]  In short, whether prescription has been interrupted through Ms. Davis's participation in the *Vargas* class action, or whether interruption was lost when she opted out of that litigation, are issues requiring evidentiary support that is not properly before the Court. Accordingly, we vacate the portion of the trial court's judgment that granted FMCC's exception of prescription and remand for further proceedings. FMCC is not precluded from reasserting its prescription arguments in the trial court.[13]

---

below: (1) If the action is barred under the law of this state, the action shall be dismissed unless it would not be barred in the state whose law would be applicable to the merits and maintenance of the action in this state is warranted by compelling considerations of remedial justice."

[12] La. Civ. Code art. 3463 (effective August 1, 2021), provides:

    A.  An interruption of prescription resulting from the filing of a suit in a competent court and in the proper venue or from service of process within the prescribed period continues as long as the suit is pending.

    B.  Interruption is considered never to have occurred if the plaintiff abandons the suit, voluntarily dismisses the suit at any time either before the defendant has made an appearance of record or thereafter, or fails to prosecute the suit at the trial. The dismissal of a suit pursuant to a compromise does not constitute a voluntary dismissal.

The Revisions Comments to Art. 3463 state: "The 2021 revision makes semantic changes and is not intended to change the law."

[13] Similarly, Ms. Davis is not precluded from seeking a ruling from the trial court on her unresolved motion for joinder of Ford Motor Company as an indispensable party.

**DECREE**

For the foregoing reasons, the portion of the trial court's judgment granting Ford Motor Credit Company's motion for summary judgment, casting Ms. Davis in judgment for $6,425.74 plus interest at nine percent per annum, is affirmed. The portion of the trial court's judgment granting Ford Motor Credit Company's exception of prescription is vacated. The matter is remanded to the trial court for further proceedings related to Ms. Davis's reconventional demand.

**AFFIRMED IN PART,  
VACATED IN PART AND REMANDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**OCTOBER 13, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 20-CA-271

### E-NOTIFIED
40TH DISTRICT COURT (CLERK)
HONORABLE KIRK A. VAUGHN, JUDGE PRO TEMPORE (DISTRICT JUDGE)
HONORABLE NGHANA LEWIS (DISTRICT JUDGE)
SCOTT C. BARNEY (APPELLEE)

### MAILED
ROBERT W. MAXWELL (APPELLEE)
ATTORNEY AT LAW
130 TERRA BELLA BOULEVARD
COVINGTON, LA 70433

OLETHIA DAVIS  (APPELLANT)
POST OFFICE BOX 2174
LAPLACE, LA 70069